The next case for argument is 23-2207 Bridges v. Collins This is interesting, things change fast. I guess we got a new Secretary of Defense two days ago and now his name is on the case. I'm not Secretary of Defense, I'm Secretary of Veterans Affairs. Yes, whenever you're ready, please proceed. Should we make you resubmit all the briefs? How many copies? Good morning. May it please the Court, the first matter at issue in this appeal is whether the Veterans Court misinterpreted Section 3.156C too narrowly as of this Court's decision. Let me ask you a factual question. I couldn't see it in the record. Do any of Mr. Bridges' military records show stressors in Bolivia? They are not specific. They do show that he was seen for stress several times around the time period that he was in Central America and South America generally. The evidence that really shows that something happened in Bolivia is in the psych opinion that says that he was reading his journal entries and he wept at them. He and I have discussed it but facts, we don't take the... But that psych opinion was years later so the facts here, the record we're considering for establishing new and relevant evidence does not include that psych thing. It's just his service and as Judge Wallach said, what else that's related to stressors? Well, basically what happened was when the record was incomplete in the first place and Mr. Bridges saw a psychiatrist and that psychiatrist said he's trying for post-traumatic stress disorder but he wasn't in any danger in Panama. It was the first thing that he said. And then Mr. Bridges was denied service connection and then later when these records had been added and there was more detail and there was more countries involved, then the psych answer was different. About just cause in Panama. Not necessarily just about just cause in Panama but about how the totality of his service in Central America and South America does appear to have had a number of stressors that then caused post-traumatic stress disorder. It's Friday and I've had a lot of cases. I thought the main deficiency that was identified in 2008 was no psychiatric opinion diagnosing him with PTSD. Am I missing something? In 2003, you mean the earlier decision? Yes. No. So it's interesting how it was written. But that's what we're looking at under Kaiser. Right, exactly. So the way the Veterans Court read it, the service record has to be related specifically to the exact words that the VA used basically in the earlier decision. But in the legacy system especially, that's not how VA did things. It would get to one item and if it said that one wasn't satisfied, one element wasn't satisfied. But the service record matters, right? Right. And the only service record you have relating to Bolivia is a commendation that they give to everybody in the Army when they're somewhere and they don't get a court-martial for something saying, you did a great job here and wherever it is, right? There's nothing else. There's nothing saying combat certificate, which they give you when you're in combat, anything like that. Well, we think happened, Your Honor, because this is what we see did happen is that once those records were added to the record, the psychiatrist knew to ask more questions. At least that's the way it appears, that the psychiatrist was like, well, what about what happened here and what happened here? And they hadn't asked him that before, not to say that he should have known to bring up any particular stressors. Well, I saw it in the 2003 file. I mean, it listed service in Panama and in Bolivia. So that wasn't completely absent. He just didn't make anything of it. He didn't raise any allegations. But more importantly to me, again, I think I'm repeating myself, is that they looked at what he said, which was Panama, I have these stressors. And they said, but you don't have any medical confirmation of PTSD. Am I misremembering that? They said that the first thing that they had said was there's no diagnosis. That was definitely the first thing that they got to. And then because they got to that, they didn't explicitly get to anything else. Right. So even if, hypothetically, and this is drawing inferences, which I'm not sure is appropriate for us to do, but he had Bolivia in there, even if there had been a stressor there, which as Judge Lawlock points out, those records don't establish that, even that. But the deficiency is with the medical opinion that wasn't there for PTSD, right? Well, the deficiency, I mean, so this is a remedial regulation, of course. So we're used to looking at it and saying, well, VA should have gotten all these records in the first place. When these records were finally gotten, did anything come of that? Did anything change? And without, you know, deciding why did the psychiatrist say what they said, we do believe, first of all, that the elements of PTSD are kind of hard to separate. Because one of the things with PTSD is that you have to have had a stressor that was significant enough. Then you have to have had a certain reaction to it. Then you have to have certain symptoms. So by not having a diagnosis of PTSD, in part it was because he said, well, he was never in any danger in Panama. So we feel like stressor, the fact that it said, yes, your company was in Operation Just Cause, we don't believe is conceding a stressor. Because we believe that it's saying that, sure, he was there in Just Cause, which was not in a war zone or at a wartime, but something was going on there at that time. But nothing that was enough for a PTSD diagnosis. How do you come within Kaiser? What's your view of what Kaiser requires? And then tell me how you think you come within that. Right. Kaiser, the main focus was what is still in issue or in dispute. And in this case, that would be anything that was not already, in any case, it would be anything that was not explicitly conceded by VA in the older decision. So if VA specifically said, well, we do absolutely believe this, you can check off that mark, but we don't believe the rest, which, again, before favorable findings, VA didn't really work that way. However, in this case, there were no elements that were explicitly conceded. They're all still on the table. So under 5107A, the veteran is still on the hook to present and support all three elements. I thought in Kaiser we said that the relevant issue is the issue that was dispositive against the veteran in the prior adjudication. And in Kaiser, that issue that was dispositive against Mr. Kaiser was the lack of any PTSD diagnosis. And so whatever new records that came in, those records couldn't be said to be relevant because they just didn't tend to show that there was a medical diagnosis of PTSD. And now when I look at the situation here, it looks like we're in the same bucket where the basis for the denial by the RO in 2003 was the lack of any medical diagnosis of PTSD. And so now any new records that are being attached to his file, they will be relevant if they tend to show that there was a medical diagnosis of PTSD. And these records right now, nobody's disputing that they don't show that. So it feels like the Kaiser case, both the law and the facts are on all fours with this case. So I don't understand right now at the moment how you get away from Kaiser. Sure. The facts are fairly similar. Some of the language in the earlier decision was a little different. My answer to the dispositive against question, there's a couple. The full phrase is that the service records need to be relevant to the issue that was dispositive against the veteran. We would argue that for a diagnosis of PTSD, one thing that you need is a sufficient stressor. What was identified in the Kaiser opinion in that case being the issue that was dispositive against Mr. Kaiser? It was the lack of a PTSD diagnosis, right? Right. Okay. And they had explicitly conceded. And that's also the dispositive issue that was against the appellant here, right? The lack of a PTSD diagnosis. Those were the main words that they used, yes. Yes. In terms of reading 3.156C, and even under Kaiser, even though Kaiser's facts are similar, of course, just by saying there's no diagnosis of PTSD, there was just more behind that. First of all, there was more that the VA didn't get to because it didn't see any need to. Remind me, I don't know the answer to this question. In 2003, did they conclude that there was a stressor in Panama? No. Did they reach that? They didn't say there wasn't. The basis for excluding it was lack of diagnosis, right? I mean, that was the main thing that they said, yes. Did they say any other grounds? I'm sorry. Did they identify any other basis for denying? No, because that's not typically how they would do it. Okay. What we think is important with Kaiser, specifically, is that any element that still remains unestablished is still on the table, even if VA didn't specifically mention it, especially if it's related. But how is what Judge Wallach referred to, the one page of his service records that came in, how is that relevant to whether or not he had a diagnosis of PTSD for either Bolivia or Panama? The reason it's relevant is because the psychiatrist found it relevant. We feel that because once these records, and I think there was more than one record, but that was the main record that was focused on. He already told us. He had already said he was in Bolivia, right? I think that Bolivia was, although I'm not certain. I apologize. No, he did. Yes. So now he has a piece of paper that says, you were in Bolivia. In support of this particular thing, whatever that was, that then caused the psychiatrist to... Working with our Bolivian friends. Sorry? Working with our Bolivian friends, that's what it says. Sure. My point is I have not dug into the facts more than I felt like the psychiatrist did. I felt like what literally happened here was that when the records were complete, the answers changed from both the psychiatrist and the adjudicator. And 3.156C is all about that. That is the whole point of 3.156C as a remedial regulation so that veterans won't be harmed by the record being incomplete in the first place. So here, on an incomplete record, the answer of the medical... If he had the record in 2003, he would have given it to a psychiatrist. The psychiatrist would have read it and diagnosed him with PTSD, and he could have won this in 2003. Is that the theory? He may have. I mean, that's certainly what happened in 2008 or 2011. But what swings the psychiatrist is him saying, I saw lots of dead bodies during Just Cause. Not, I was there. That was some of it, and he had said that initially, and the first psychiatrist didn't seem to care because he wasn't in any personal danger, I guess. Basically, we want to make sure that when Kaiser is applied by the Veterans Court, that elements that were left unestablished, that the VA has not conceded, that a record that is related to, because a stressor is always related to the diagnosis of PTSD, if it's related to what went on in the earlier decision, honestly, I think it should be... You draw a distinction between related to and relevant? No, I guess I don't. Okay. All right. You're into your rebuttals, so why don't you save that. Sorry. Thank you. Thank you. Good morning. Please proceed. Good morning. May it please the Court. The Court should affirm the Veterans Court's decision because Mr. Bridges has not presented newly associated records relevant to the issue that was dispositive against his claim in 2003. I want to take the Court to that decision in 2003. The language in that decision that we care about for this purpose is on Appendix 52. The first full paragraph near the top of the page, the middle of that paragraph, says your claim for service connection for PTSD is denied because the evidence does not show... Wait a minute. Sorry. Let me find it. Yes. Appendix 52.  And your claim, this is in the middle of the page under 2? Yeah. Under 2. Middle paragraph. No, above that. Sorry. The second paragraph on the page to the top. Okay. And then the second line, second sentence of that paragraph that begins, your claim for service connection for PTSD. So the paragraph that begins, a diagnosis of post-traumatic stress disorder. Can I just say, this is neither here nor there, but did they have, I mean, he had evidence of stressors in Panama. Was that before the board in 2003? Yes, Your Honor. So it wasn't the stressors that kept him out. It was the lack of a diagnosis. Correct, Your Honor. And actually, so I would first point the Court to the last two pages of the records, Appendix 173 and 174. That is his stressor statement from the 2002 claim. But on that same page on 52, Appendix 52, the sentence that I was focused on first was your claim for service connection for PTSD is denied because the evidence does not show a confirmed diagnosis of post-traumatic stress disorder, which would permit a finding of service connection. The next paragraph and sentence is, you provided a stressor statement that you were involved in Panama Operation Just Cause and indicated that you saw 20 to 30 dead Panamanians. Your company's involvement in Operation Just Cause has been confirmed. We understand that to be acceptance of that stressor, and the board understood it that way, too, and the board decision that is operative at this point, there were a number, but the 2022 board decision, this is at Appendix 21, the characterization, this is, again, on Appendix 21, the first full paragraph that starts at the time of the July 2003 rating decision. It said the AOJ noted that although the occurrence of the veteran's claimed stressor was verified regarding traumatic events in Panama, the record did not reflect a medical diagnosis of PTSD. That characterization in the language of the board's decision or the RO's decision in 2003 put this case squarely on a course with Kaiser. The operative element of the claim was the lack or the denial of the claim was the lack of a diagnosis of PTSD, and so to the extent that, and I think what Mr. Bridges is arguing here is that his records, if anything, go to what could be another stressor. That element was not the dispositive element. The dispositive element was the lack of the diagnosis of PTSD, and so if we don't have records that are relevant to that diagnosis, then under Kaiser, they do not fall within 156C as relevant. There seems to be another issue raised, and I didn't have time to raise it with your friend, but I really don't understand. One, I'm not sure it's really that different than the first issue, and two, if it is, I'm not sure I understand what it is because it seems to be characterized differently in blue, and then again in gray, they're talking about the veteran's canon. One, what do you think the argument is, and two, what should we do about it? I'm not entirely sure I know which specific argument Your Honor is referencing. There is an argument. Well, there's some arguments that your answer to is it's a fact question. Yes, Your Honor, that's true. So I think the specific one that we addressed in the brief had to do with the argument that, I think, was addressed a little bit at the end of a friend's discussion about the speculation with respect to what these records might do. If these specific records had been in front of the examiner in 2003, what questions could that individual have asked? That is, we think, absolutely a fact question. It's one that the Board, again, addressed actually on the same page that I had just pointed the court to in 21. At the bottom of the page, the bottom of the big full paragraph, I won't read it. There are several sentences that are relevant, but at that point, the Board described why these particular records aren't relevant to a PTSD diagnosis. And then the Veterans Court also addressed the question of the speculations at the bottom of Appendix 9 onto Appendix 10, speculating that the service records, if they had been associated with this file in 2003, the medical examiner might have inquired about his service in Bolivia. But why do we reach those questions? You don't, Your Honor, I think is our point. You don't. There has been a lot of discussion about the facts here that I think are beyond the court's jurisdiction. I don't want to add to that. I will certainly note that, again, I think this is a factual question, but there were several VA exams that took into account the Bolivia records. There was one in 2009 and one in 2013. Those are Appendix 70 to 84 and then Appendix 117 to 121, both, again, finding no diagnosis of PTSD. The only PTSD diagnosis came from the private record in 2011. So there was a conflict. All three of those records considered Bolivia. And you got his benefits going back to 2008? Yes. Yes. So the fight here is between 2003 and 2008. That's correct, Your Honor. Just so I understand what you're saying, you're saying even if the claim, I guess in 2002, was read charitably to include within its scope something relating to Bolivia, we still get funneled back to the same finish line, which is the view that any and all of these documents still aren't relevant because they lack any evidence of a diagnosis of PTSD? Yes, Your Honor, that's correct. So I think there was a little bit of discussion in the briefing about the scope of the 2002 claim. Frankly, I don't think that question is relevant. I think there was a little bit of discussion in the Veterans Court and or the Board about whether the claim was correctly construed as encompassing Bolivia as a stressor or whether it was specific to Panama. Either way, even I think the Board was probably correct in construing the claim as identifying stressors in Panama and Panama only. But even if we read the claim broadly to encompass all service, again, the stressor is not the dispositive issue. It's the PTSD diagnosis. And so regardless of whether those stressors were verified, whether new stressors are verified, they do not go to the question of that diagnosis. Can I just ask you for my own information, a historical question? Certainly. Did Kaiser change the way the CAVC and the Board were dealing with this provision? Or was this – I don't remember how Kaiser arose, if we were initially flipping the CAVC or not. Do you recall? I mean, has anything changed? Has the way the CAVC and the Board deal with these kinds of cases changed since Kaiser? Do you think it's a different standard than they were applying previously? I don't think so, Your Honor. I think it clarified. Kaiser did affirm the decision below. So I think it certainly clarified how to treat the question of relevance. And this case actually was remanded from the Veterans Court to the Board in light of Kaiser for the Board to just make sure that Kaiser was being applied. But I don't think it fundamentally changed how the VA was considering these. What if, hypothetically, the 2003 RO's decision had said, we're denying the claim for two different reasons. One is you don't have a stressor in service, and also you don't have a PTSD diagnosis. Then, finally, all these files come in, and we look at them, and there's evidence of an in-service stressor at Mount Bolivia somewhere. Does that count as being relevant for consideration? It's an issue that was dispositive against the veteran because at the time of the RO decision, one of the bases was the lack of an in-service stressor? I think if we're talking about sort of the records that were at issue in this case, or something similar to those, I think it would still probably not be relevant. I think it would be a bit factual, but I think it would still not be relevant because the point of Kaiser was to ensure that the new records and the factor that they went to could be outcome determinative. If those records are going to one of two distinct bases that were found to be insufficient, you're still missing that diagnosis, and if these records don't go to that diagnosis, you can't change the outcome. In that scenario, I think they still would not be relevant, such that they would change the outcome of the original claim. Maybe. I mean, what if you had gone to psychiatrists and they said, well, unless you can show me that you have been in a stressful situation, I'm not going to accept that at face value, and then they come up with the records three years later that show that they were indeed in a stressor situation, then maybe. I mean, there could be a set of facts, I think, that... I agree, Your Honor. I think that's why I said it could be fact-determinant. If the diagnosis, and the VA, as I agree, the VA diagnosis, to some extent does include a consideration of an in-service stressor. And so if the diagnosis says, we agree you've got some current psychological concerns, but we're not seeing a stressor event that would let us diagnose PTSD, then I think those documents would be relevant to the diagnosis, as opposed to just the stressor itself. Yeah, if we turn the situation on its head, and Just Cause had happened before Bolivia, and he came in and said, geez, every time I'm somewhere and I hear soldiers speaking Spanish, it takes me back to Just Cause, that hypothetical might be relevant. Yes, Your Honor. Anything else?  Thank you. Thank you. Your Honors, sorry that I broke into my rebuttal time a bit before. I wanted to make clear, first of all, that we definitely did not ask what could the psychiatrist have said in 2003, particularly not of this court. That is a factual question. What I think you were asking about was the scope of claim question, in which the legal question was, if the veteran first says, I have PTSD because of this, and then later on it turns out to be because of that, or whatever, I have a shoulder injury because of this, and later it turns out to be because of that, but that is also service-connected, can the VA at any point have limited the scope of the claim to just what the veteran first said, which is what we believe the Board did here, when they said, well, wait, we were talking about Panama, not Bolivia. It made it sound like no record about Bolivia could be relevant at all as a matter of law, because the scope of the claim did not include Bolivia, and we wanted to make sure to respond to that as well, because we found it very concerning. Regarding the relevant question, as I mentioned before, of course, 3.156C is remedial. We think that all of this should be read very broadly in terms of, could a psychiatrist in 2003 have changed their mind? Maybe. I mean, we certainly can't say no, and we think that any time there's a maybe along the line in this question, it should go in the direction of the veteran, because the VA could have gotten their records in the first place, and we'll never know whether the answer would have been different then. Thank you. We thank both sides. The case is submitted.